IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DORIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 1:09-CV-873-WKW [WO] |
| ) | |
| WOMEN'S HEALTHCARE OF ) | |
| DOTHAN, P.C., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is a Renewed Rule 12 Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 24), filed by Women's Healthcare of Dothan, P.C., Christopher Nicholls and Nicole Johnson, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Doris Williams filed a response in opposition. (Doc. # 25.) Based upon careful consideration of the arguments of counsel, the applicable law and the Amended Complaint's allegations, the motion is due to be granted in part and denied in part.

### **I. JURISDICTION AND VENUE**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction). Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

### **II. STANDARD OF REVIEW**

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to"

the plaintiff. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. BACKGROUND

**A.     Facts**

Tragically, Ms. Williams gave birth to a stillborn son at Women's Healthcare of Dothan, PC, on September 21, 2007. (Am. Compl. ¶¶ 7, 25-26, 32 (Doc. # 23).) Ms. Williams alleges that Women's Healthcare is responsible for the stillborn death because one of its physicians misdiagnosed the stage of her pregnancy and minimized her repeated "reports of extreme pain during her pregnancy." (Am. Compl. ¶¶ 7, 8, 10.) She further contends that, during her treatment at Women's Healthcare, she was subjected to derogatory slurs on the basis of her race (African-American) and embarrassing questions concerning her marital status (unwed). (Am. Compl. ¶¶ 8, 12.)

B.   **Parties**

In her Amended Complaint, Ms. Williams names Women's Healthcare as the sole defendant. She is no longer pursuing her claims against the individual physicians, Christopher Nicholls and Nicole Johnson, who were named in the original Complaint.[1]

C.   **Procedural History**

Like the Amended Complaint, the original Complaint was followed by a motion to dismiss. Ms. Williams opposed that motion and, alternatively, moved to amend her complaint. The motion to dismiss the Complaint was granted in part and denied in part, and leave to partially amend the Complaint was granted. (Mem. Op. & Order (Doc. # 22).) The end result of these rulings was that (1) the Title VII claim (Count I) was dismissed with prejudice for failure of the Complaint to allege an employer-employee relationship, (2) the claims brought pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et. seq.* (Counts II and III) against the individual physicians were dismissed with prejudice,[2] (3) Ms. Williams was permitted to amend her EMTALA claims (Counts II and III) to clarify whether Women's Healthcare is a

---

[1] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)).

[2] Answering Women's Healthcare's inquiry (Doc. # 24, at 2 n.1), the prior Memorandum Opinion and Order contemplated dismissal of the physicians as to both EMTALA counts (*i.e.*, Counts II and III) on the ground that there is no individual liability against a physician under EMTALA. (Doc. # 22, at 8.) The inquiry, however, is moot, as Ms. Williams brings no claims against the physicians in her Amended Complaint.

3

"participating hospital," (4) the Fifth Amendment and Fourteenth Amendment claims in Count IV were dismissed with prejudice for failure of Ms. Williams to allege state action, (5) the state law claims (Count V) survived, and (6) the Complaint was liberally construed to contain a non-employment, racial discrimination claim under 42 U.S.C. § 1981.  (Mem. Op. & Order.)

**D.     Claims in the Amended Complaint**

The Amended Complaint contains the following claims:  (1) 42 U.S.C. § 1981 claim based upon racial discrimination "in contractual relations or the execution [of] contracts" (Count I); (2) EMTALA claims against Women's Healthcare (Counts II and III); (3) a claim alleging a violation of Ms. Williams's constitutional "right to privacy" (Count IV); and (4) state law torts (Count V), including a violation of the Alabama Medical Liability Act ("AMLA"), *see* Ala. Code §§ 6-5-480 to -488; Ala. Code §§ 6-5-541 to -552. (Am. Compl.)

## IV.  DISCUSSION

Women's Healthcare argues that Counts I, II, III and IV do not state a claim for relief under Rule 12(b)(6).  It further argues that the failure of Counts I, II, III and IV to survive Rule 12(b)(6) scrutiny leaves the state law claims in Count V without an independent jurisdictional basis or, alternatively, that Count V also fails to state a claim for relief.

### A.     <u>42 U.S.C. § 1981 (Count I)</u>[3]

Outside the employment context, 42 U.S.C. § 1981 makes only the occasional appearance in litigation. The elements of a non-employment, racial discrimination claim under § 1981 are "'(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007). In *Kinnon*, there was evidence that a restaurant manager called a customer a "nigger," thereby raising a genuine issue of material fact as to the second element of discriminatory intent. *See id.* (collecting cases). Concerning the third element, "[t]he rights enumerated in [§ 1981] include the right 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens.'" *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010). When interference with a contract is alleged, "'a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights.'" *Id.* (quoting *Kinnon*, 490 F.3d at 890).

It is alleged, and not disputed, that Ms. Williams is African-American. Only the second and third elements are in contention. Women's Healthcare contends that the Amended Complaint is vague as to "exactly how" Women's Healthcare "discriminated

---

[3] While Ms. Williams titles Count I as "Title VII violations," the substantive paragraphs of that count allege only § 1981 violations. For that reason and because there are no allegations of an "employment relationship" between Ms. Williams and Women's Healthcare, it is presumed that the reference to "Title VII" was a scrivener's error.

against her." (Doc. # 24, at 6.) It further argues that Ms. Williams's allegations concerning her alleged rights are "vague and unsupported" because she "never identifies the contract, does not cite to any of its terms, does not specify when or by whom it was executed, and does not attach a copy of the contract . . . ." (Doc. # 24, at 8.) The court disagrees that a basis for dismissal has been presented.

As to the second element, the Amended Complaint alleges that, while being treated at Women's Healthcare, Ms. Williams was subjected to "numerous racial slurs" and "racially rude" treatment. (Am. Compl. ¶¶ 8, 12.) The allegations of racial slurs bring this case squarely within the parameters of *Kinnon* and, if true, "constitute[] direct evidence of discriminatory intent." 490 F.3d at 891. As to the third element, Ms. Williams's allegations, although not a model of clarity, do more than merely recite the elements of a § 1981 claim in the non-employment context. The allegations pinpoint the activity in the statute upon which Ms. Williams bases her racial discrimination claim. That activity is an alleged interference with a written contract she signed as a prerequisite to receiving medical treatment from Women's Healthcare. Ms. Williams predicates her contractual relationship with Women's Healthcare on an express written agreement,[4] and interference with a contract is one of the rights specifically enumerated in § 1981.

---

[4] An implied contract for the receipt of medical services is not alleged, and appropriately so. *See Marsh v. St. Margaret's Hosp.*, 535 So. 2d 147, 149 (Ala. 1988) (Alabama "law does not imply a contract to exercise due care in the delivery of medical services by a hospital, but does impose a duty to do so, the breach of which gives rise to a tort action.").

Furthermore, Women's Healthcare cites no authority that, when the claim is one for breach of an express contract, the contract must be incorporated in or attached to the pleading to state a viable claim under Alabama law.  On this record, and given that Women's Healthcare presumably would have knowledge of and access to any written contract and, thus, fair notice of its terms,[5] the better course is to permit discovery on this claim and take up the issue at the summary judgment stage based upon the evidence.[6]

**B.    Counts II and III**

Counts II and III are EMTALA claims against Women's Healthcare.  EMTALA, namely, 42 U.S.C. § 1395dd(d)(2)(A), allows a private plaintiff to file a civil action against a "participating hospital" for "personal harm" suffered "as a direct result of a participating hospital's violation" of its requirements pertaining to emergency room screening and stabilization services.  § 1395dd(d)(2)(A); *see also Rodriguez v. Am. Int'l Ins. Co. of P.R.*, 402 F.3d 45, 48 (1st Cir. 2005).  Thus, by its terms, EMTALA "does not apply to all health care facilities," only to "participating hospitals." *Id.*  A "participating hospital" is "a hospital that has entered into a [medicare] provider agreement under section 1395cc of this title,"

---

[5] Whether a contract existed has not been admitted or denied by Women's Healthcare.

[6] In her response, Ms. Williams argues that relief is sought for gender discrimination under § 1981.  (Pl. Response 2, 7.)  Section 1981, however, "provides rights and remedies only with respect to racial discrimination," not gender discrimination.  *Givens v. Chambers*, 548 F. Supp. 2d 1259, 1269 (M.D. Ala. 2008); *see also Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender[.]").

7

§ 1395dd(e)(2), and which meets the multi-factored definition of a hospital, set out in 42 U.S.C. § 1395x, *see Rodriguez*, 402 F.3d at 48.

Previously, because Ms. Williams had not alleged, or even argued, that Women's Healthcare of Dothan, PC, is a "participating hospital" governed by EMTALA, the court found that she had failed to allege an essential element of her claim. (Mem. Op. & Order 9-10.) In lieu of dismissal, however, Ms. Williams was permitted to amend her EMTALA claims to clarify whether Women's Healthcare is a "participating hospital" and, if so, the factual basis for that contention. The Amended Complaint now contains allegations that Women's Healthcare "appear[s] to be [a] 'participating hospital[],'" that it is "known to accept Medicaid and Medicare," and that at her first appointment, Women's Healthcare encouraged her to "apply for federal Medicaid or Medicare assistance." (Am. Compl. ¶ 4; Pl. Aff. (Ex. to Am. Compl.).)

Women's Healthcare complains that these new allegations are insufficient to satisfy Ms. Williams's burden because the facts are stated tentatively and there are no allegations that Women's Healthcare actually has entered into a medicare provider agreement. (Doc. # 24, at 9.) The argument is rejected for two reasons.

First, whether Women's Healthcare actually has entered into a medicare agreement is a fact uniquely within the knowledge and control of Women's Healthcare. At the pleading stage, Ms. Williams will not be penalized for her lack of direct knowledge of this fact, but will be given the opportunity to determine through discovery if there is such an agreement.

Second, the limited information Ms. Williams has been able to amass prior to discovery suggests that such an agreement existed. It can reasonably be inferred from Ms. Williams's personal experience, *i.e.*, that Women's Healthcare requested that she apply for medicare or medicaid, as well as her knowledge and belief of Women's Healthcare's status, that Women's Healthcare accepted medicare payments and, thus, that it had entered into a provider agreement permitting it to seek medicare reimbursement. Ms. Williams is not required to prove her case in the complaint, only to plead her case. *See Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, No. 09-16154, 2010 WL 4136634 (11th Cir. Oct. 22, 2010) (published) ("[I]n *Iqbal* the Supreme Court clarified that '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 129 S. Ct. at 1949)).

Similarly, whether Women's Healthcare qualifies as a participating hospital, an issue raised by Women's Healthcare (Mot. 10-11), is better addressed based upon the evidence. Notably, the overwhelming majority of cases relied upon by Women's Healthcare in support of its argument for dismissal of the EMTALA claims were decided based upon the evidence, either at summary judgment or trial, not on a motion to dismiss based upon only allegations in a complaint. (Mot. 11 n.5.) The two cases deciding Rule 12(b)(6) motions involved the purely legal question of whether EMTALA permits suit against responsible physicians. (Def. Mot. 11 n.5.) Accordingly, Women's Healthcare's motion to dismiss Counts II and III is due to be denied.

9

**C.     Count IV**

Count IV alleges a claim or claims under the United States Constitution for violations of a right to privacy. As explained in the prior Memorandum Opinion and Order, the absence of allegations of federal or state action on behalf of Women's Healthcare is fatal to Count IV. (*See* Mem. Op. & Order 7-8.) Count IV is due to be dismissed with prejudice.

**D.     Count V**

Count V alleges state law claims on the basis of supplemental jurisdiction.[7] Women's Healthcare argues that Ms. Williams has not pleaded her medical malpractice claims with "detailed specification and factual description of each act and omission," as required by the AMLA. Ala. Code § 6-5-551; (Mot. 16.)

Section 6-5-551 of the Alabama Code provides, in relevant part:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, . . . [t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts . . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

The Supreme Court of Alabama has held that under § 6-5-551, "although every element of the cause of action need not be stated with particularity, the plaintiff must provide the defendant health care provider fair notice of the allegedly negligent act and must identify

---

[7] Because federal law claims survive the present motion to dismiss, Women's Healthcare's argument predicated on the absence of an independent basis for jurisdiction over the state law claims is moot.

the time and place it occurred and the resulting harm." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). If "the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff." *Id.* In *Loftin v. Labs-Fountain Valley, Inc.*, No. 3:06cv839, 2006 WL 3359325 (M. D. Ala. Nov. 17, 2006), this court found that allegations that the defendants negligently failed to discover through a series of tests that the plaintiff had cancer satisfied AMLA's pleading requirements. *See id.* at *2. The complaint identified the tests by the date performed and identification number, and alleged that erroneous laboratory results caused the plaintiff to undergo "invasive treatment." *Id.* These allegations gave the defendants "fair notice of the allegedly negligent act, identifying the time and place it occurred, and the resulting harm." *Id.* The same result as in *Loftin* is mandated here.

As the factual basis for Count V, Ms. Williams alleges that the medical staff with Women's Healthcare violated the "normal standard of care in the medical community" by leaving her on high blood pressure medication during her pregnancy. (Am. Compl. ¶ 40.) This failure, according to Ms. Williams, "resulted in the ultimate mass reduction of amniotic fluid in the maternal womb, and also caused the blood flow to the uterus to decrease, resulting" ultimately in the stillborn death of her child on September 21, 2007. (Am. Compl. ¶ 12.) These allegations give Women's Healthcare "fair notice" of the alleged negligent act,

the time frame and place of its occurrence, and the harm caused.  Accordingly, Count V is sufficiently pleaded to overcome Women's Healthcare's motion to dismiss.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that the Rule 12 Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 24) is GRANTED in part and DENIED in part.  The motion is DENIED as to Count I (§ 1981 racial discrimination), Count II (EMTALA), Count III (EMTALA), and Count V (state law claims). The motion is GRANTED with prejudice as to Count IV (U.S. Constitution).

DONE this 8th day of November, 2010.

        /s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE